Case 2:26-cv-01710-MCS-MAR   Document 1   Filed 02/18/26   Page 1 of 39   Page ID #:1

Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Victoria E. Mulvey (SBN 343220)
vmulvey@blakelylawgroup.com
BLAKELY LAW GROUP
1108 Manhattan Ave., Suite B
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

***Attorneys for Plaintiffs***
***Estée Lauder, Inc; Le Labo Holding LLC;***
***La Mer Technology, Inc.; and 001 Del LLC d/b/a Tom Ford***

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEE LAUDER, INC., a Delaware Corporation; LE LABO HOLDING LLC, a Delaware Limited Liability Company; LA MER TECHNOLOGY, INC., a Delaware Corporation; and 001 DEL LLC d/b/a TOM FORD, a Delaware Limited Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> ZOETOP BUSINESS CO., LIMITED, a Hong Kong SAR China Private Limited Company; SHEIN US SERVICES, LLC, a Delaware Limited Liability Company; SHEIN DISTRIBUTION CORPORATION, a Delaware Corporation; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO.: 2:26-cv-01710 <br><br> **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** <br><br> **1. TRADEMARK INFRINGEMENT (CLAIMS 1-4)** <br><br> **2. FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTIONS (CLAIMS 5-8)** <br><br> **3. COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION (CLAIM 9)** <br><br> **4. VICARIOUS TRADEMARK INFRINGEMENT (CLAIM 10)** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Estée Lauder, Inc. ("Estée Lauder"), Le Labo Holding LLC ("Le Labo"), La Mer Technology, Inc ("La Mer"), and 001 Del LLC d/b/a Tom Ford ("Tom Ford") (collectively, "Plaintiffs") for their claims against Defendants Zoetop Business Co., Limited ("Zoetop"), Shein US Services, LLC ("Shein US Services"), Shein Distribution Corporation ("Shein Distribution"), and DOES 1-10 (collectively,

"Defendants") allege as follows:

## JURISDICTION AND VENUE

1.     Plaintiffs file this action against Defendants for trademark infringement and false designation of origin under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), and related claims of trademark infringement and unfair competition under the common law of the State of California.

2.     This Court has subject matter jurisdiction over Plaintiffs' Lanham Act claims under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over Plaintiffs' state and common law claims under 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     This Court has personal jurisdiction over Defendants because Defendants committed an intentional act by offering for sale and/or selling products which infringe upon Plaintiffs' intellectual property as more fully described below, such actions were expressly aimed at the state of California and its consumers, partly because Defendants operate an interactive website where the infringing products can be purchased from and shipped to this State, and advertise and market such products to consumers in this State, and thus Defendants caused monetary and reputational harm to Plaintiffs that Defendants know is likely to be suffered in this District because Defendants know that Plaintiffs conduct substantial business in the State of California.

4.     Venue is proper under 28 U.S.C. §§ 1391 (b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district, most of the evidence is located in this judicial district, and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

5.     Estée Lauder, Inc. is a corporation organized and existing under the laws of the state of Delaware, with an office and principal place of business located at 767 Fifth Avenue, New York, New York 10153.

6. Le Labo Holding, LLC is a limited liability company organized and existing under the laws of the state of Delaware, with an office and principal place of business located at 233 Elizabeth Street, New York, New York 10012.

7. La Mer Technology, Inc. is a corporation organized and existing under the laws of the state of Delaware, with an office and principal place of business located at 767 Fifth Avenue, New York, New York 10153.

8. 001 Del LLC d/b/a Tom Ford is a limited liability company organized and existing under the laws of the state of Delaware, with an office and principal place of business located at 767 Fifth Avenue, New York, New York 19153.

9. Upon information and belief, Defendant Zoetop Business Co., Limited is a Private Limited Company organized and existing under the laws of Hong Kong Special Administrative Region, with a registered office and principal place of business located at Room 2609, China Resources Building, 26 Harbour Road, Wanchai, Hong Kong SAR, China.

10. Upon information and belief, Defendant Shein US Services, LLC is a limited liability company organized and existing under the laws of the State of Delaware and registered to do business in the State of California, with a registered office and principal place of business located at 777 S. Alameda Street, 2nd Floor, Los Angeles, California 90021.

11. Upon information and belief, Defendant Shein Distribution Corporation is a corporation organized and existing under the laws of the State of Delaware and registered to do business in the State of California, with a registered office and principal place of business located at 777 S. Alameda Street, Ste. 400, Los Angeles, California 90021.

12. Plaintiffs are unaware of the names and true capacities of Defendants, whether individuals, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names. Plaintiffs will seek leave to amend this complaint when their true names and capacities are ascertained.

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Upon information and belief, each one of Defendants caused or are in some manner responsible for causing the wrongful acts alleged herein, and that at all relevant times each one was the agent, servant, and/or employee of the other Defendants acting within the course and scope of said agency, service, and employment.

13.   Upon information and belief, at all relevant times herein, each one of Defendants knew or reasonably should have known of the wrongful acts and behavior alleged herein and the damages caused thereby, ratified and encouraged such acts and behavior, and/or had a non-delegable duty to prevent such acts and behavior but failed or refused to do so.

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.   The Estée Lauder Companies Brands and Marks**

14.   The Estée Lauder Companies, Inc. ("ELC") is a global leader in prestige beauty. With a portfolio of over 20 best-in-class brands, including ESTÉE LAUDER ®, LE LABO®, LA MER®, and TOM FORD®, ELC designs, manufactures, markets, and sells high-quality skin care, makeup, fragrance, and hair care products and serves as a steward of consumer-beloved luxury and prestige brands globally.

### 1. The ESTÉE LAUDER ® Brand

15.   Estée Lauder Inc. owns, manages, enforces, licenses and maintains the intellectual property, including trademarks and copyrights, used in connection with the operation of the ESTÉE LAUDER brand (hereinafter referred to as "Estée Lauder"). Founded in 1946 by Mrs. Estée Lauder, one of the world's first female entrepreneurs, the Estée Lauder brand continues her legacy of creating innovative, sophisticated, high-performance skin care and makeup products and iconic fragrances. One of the largest cosmetic brands in the world, Estée Lauder continues to be at the forefront of the beauty industry, engaging consumers in over 150 countries and territories around the world and at a variety of touchpoints, in stores and online.

16.   With over 40 years of expertise in night science and over 30 years of collagen research, Estée Lauder is known for its advanced skincare solutions, including

anti-aging products and treatments that cater to a broad range of skin types and concerns.

17.    Over the last 70 years, Estée Lauder has produced some of the most iconic skincare and make-up products, such as the Advanced Night Repair Synchronized Recovery Complex, Re-Nutriv Ultimate Lift Age-Correcting Creme and Pure Color.

18.    Estée Lauder is the owner of numerous marks, including, in relevant part, the following U.S. Trademark Registrations ("Estée Lauder Marks"):

**[Intentionally Left Blank]**

| Estée Lauder Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| ESTÉE LAUDER | 3,217,192 | 03/13/2007 | IC 003- (Cosmetics, toilet preparations & perfumery products, namely lipsticks, lip gloss, lip liners, lip balms, lip palettes; eye shadows, eye lining pencils, liquid eye liners, eye makeup, mascara, eyebrow pencils, eye palettes, blushers, multi-use cosmetic sticks, foundation makeup, pressed powder, loose powder, makeup remover, concealers, multi-use-colored creams, powders & gels for use on face, cleansers, namely, facial cleansers & skin cleansers; exfoliators, namely, skin & facial exfoliators; moisturizers for the face & body, masks for the face & body, toners, eye creams, skin cleansing wipes; non-medicated skin care creams, lotions, oils, sprays, & gels for the face & body; body firming creams, lotions, serums, & sprays for the face & body; nail polish, nail enamel; fragrances for personal use; suncare lotions, bronzers, tanning lotions, sunscreens, after sun soothers & rehydrators, namely, sun creams, lotions & gels) |
| ADVANCED NIGHT REPAIR | 3,126,881 | 08/08/2006 | IC 003- (Non-medicated skincare preparations) |

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

| Estée Lauder Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | 6,166,738 | 10/06/2020 | IC 003- (Non-medicated skincare preparations) |

19.    Attached hereto as **Exhibit A** are true and correct copies of the trademark registrations identified in paragraph 18 of this Complaint, which are incorporated herein by reference.

### 2.  The LE LABO® Brand

20.    Le Labo Holding LLC owns, manages, enforces, licenses and maintains the intellectual property, including trademarks and copyrights, used in connection with the operation of the LE LABO brand (hereinafter referred to as "Le Labo"). Le Labo was founded in the Nolita neighborhood of New York City in 2006 with creativity and craftsmanship in mind. Le Labo distinguishes itself in the fragrance world by using a "slow perfumery" approach—emphasizing the importance of hand-blending and assembling its fragrances and offering customized labels to customers.

21.    Since its start in 2006, the popularity of Le Labo's fragrances has steadily grown in the U.S. and around the world. Le Labo's fragrances have been and remain highly coveted today by consumers as one of the most popular and recognizable symbols of luxury.

22.    Le Labo's products are the subject of significant media attention and are often singled out by industry editors.  For example, Le Labo's fragrances were highlighted by Harpers' Bazaar this year, including the wildly popular SANTAL 33.

7
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Le Labo also regularly collaborates with prominent third parties in the field of culture, art, hospitality and fashion. For example, in 2010, Le Labo created its fragrance CADE 26 for the famous Gramercy Park Hotel in New York City, and more recently collaborated with The Met and launched a co-branded LAURIER 62 candle inspired by a Henri-Edmond Cross Painting. Since then, the popularity of Le Labo products has grown exponentially, with celebrities such as Taylor Swift, Joe Jonas, Sophie Turner, and Gracie Abrams among a myriad of others reportedly wearing its fragrances. Beyoncé was shown burning two Le Labo candles in her 2016 visual album *Lemonade*.

23. The worldwide recognition as a luxury brand and the overwhelming popularity of its products is due to Le Labo's continuous commitment to quality and excellence. Today, Le Labo is widely available and sold to consumers in every state, including California, through its website [www.lelabofragrances.com](www.lelabofragrances.com), free-standing Le Labo stores, and luxury department stores such as Saks Fifth Avenue, Bloomingdales, and Nordstrom, both online and at their brick and mortar locations. Le Labo products are sold in more than 70 countries in more than 600 retail locations globally.

24. Le Labo is the owner of numerous marks, including, in relevant part, the following U.S. federal trademark registrations (collectively, the "Le Labo Marks"):

| Le Labo Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| LE LABO | 4,659,463 | 12/23/2014 | IC 003- (perfumes, aftershaves, and colognes)<br><br>IC 004- (scented candles) |

| Le Labo Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| LE LABO | 4,659,715 | 12/23/2014 | IC 003- (fragrances, hair care preparations, non-medicated skin care preparations, non medicated bath care preparations, non-medicated bath care preparations, scented room sprays, soaps and detergents);<br><br>IC 35 (online retail store services featuring fragrances, perfumes, aftershaves, and colognes, non-medicated skin care preparations, non-medicated bath care preparations, hair care preparations, candles, soaps and detergents, and scented room sprays; Retail store services featuring fragrances, perfumes, aftershaves, and colognes, non-medicated skin care preparations, non-medicated bath care preparations, hair care preparations, candles, soaps and detergents, and scented room sprays) |
| LE LABO GRASSE – NEW YORK | 7,303,674 | 02/13/2024 | IC 003- (fragrances, hair care preparations, non medicated skin case preparations, non medicated toiletry preparations);<br><br>IC 004 (candles);<br><br>IC 35 (online retail store services featuring fragrances, perfumes, aftershaves, and colognes, non-medicated skin care preparations, non-medicated bath care preparations, hair care preparations, candles, soaps and detergents, and scented room |

9
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

| Le Labo Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | | | sprays; Retail store services featuring fragrances, perfumes, aftershaves, and colognes, non-medicated skin care preparations, non-medicated bath care preparations, hair care preparations, candles, soaps and detergents, and scented room sprays) |
| SANTAL 33 | 6,806,693 | 08/02/2022 | IC 003- (Fragrances; Laundry detergent; Non-medicated skin care preparations; Non-medicated toiletry preparations) |

25. Attached hereto as **Exhibit B** are true and correct copies of the trademark registrations identified in paragraph 24 of this Complaint, which are incorporated herein by reference.

### 3. The LA MER® Brand

26. La Mer Technology, Inc. owns, manages, enforces, licenses and maintains the intellectual property, including trademarks and copyrights, used in connection with the operation of the LA MER brand (hereinafter referred to as "La Mer"). La Mer started when aerospace physicist Dr. Max Huber suffered burns in a lab accident and was inspired to create his own skin care products. After 12 years of experimentation, he discovered a fermentation process that transformed sea kelp and other ingredients into La Mer's first product: the CREME DE LA MER® moisturizing cream, which has been sold at department stores in the United States since 1956.

27. ELC acquired La Mer (or its predecessor in interest) in 1995 and, since then, La Mer has become one of the most coveted skincare brands in the world. For example, many A-List celebrities have been reported to use La Mer skincare products, and La Mer's "The Eye Concentrate" eye cream won *Allure* Magazine's Best of Beauty

award in 2023. La Mer products have also been mentioned countless times in famous publications such as *Harper's Bazaar* and *Marie Claire*.

28. The worldwide recognition as a luxury brand and the overwhelming popularity of its products is due to La Mer's continuous commitment to quality and excellence. La Mer is sold nationwide through its website www.cremedelamer.com, in addition to luxury department stores such as Saks Fifth Avenue and Nordstrom, and specialty beauty retailers such as Sephora and Bluemercury, both online and at their brick and mortar locations.

29. La Mer is the owner of numerous marks, including, in relevant part, the following U.S. federal trademark registrations (collectively, the "La Mer Marks"):

| La Mer Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| LA MER | 1,339,888 | 06/11/1985 | IC 003- (Cosmetics- namely, skin crème & skin moisturizer) |
| LA MER | 2,276,149 | 09/07/1999 | IC 003- (Cosmetics, namely, skin care preparations, skin cleansing lotion, skin cleansing gel, skin tonic, skin moisturizing cream & lotion) |
| LA MER | 3,440,482 | 06/03/2008 | IC 003- (Cosmetics; Non medicated skin care preparations) |

| La Mer Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| LA MER | 3,637,492 | 06/16/2009 | IC 003- (Non-medicated skin care preparations; cosmetics; body & beauty care cosmetics); IC 035- (retail store services featuring personal care products, cosmetics, toiletries, bath & body products, skin care products, & beauty treatments; online retail store services featuring personal care products, cosmetics, toiletries, bath & body products, skin care products, & beauty treatments); IC 044- (Beauty consultation in the field of selection & use of cosmetics, toiletries, bath & body products, skin care products, beauty treatments & personal appearance; skin care salons; providing information regarding the selection & use of cosmetics, toiletries, skin care products, bath & body products, beauty treatments & personal appearance; providing services relating to skin care, namely facials |

30.   Attached hereto as **Exhibit C** are true and correct copies of the trademark registrations identified in paragraph 29 of this Complaint, which are incorporated herein by reference.

### 4. The TOM FORD® Brand

31.    001 Del LLC owns, manages, enforces, licenses and maintains the intellectual property, including trademarks and copyrights, used in connection with the operation of the TOM FORD brand (hereinafter referred to as "Tom Ford").  Tom Ford is a global luxury fashion house offering exceptional women's and men's fashion, accessories, eyewear, and beauty products. Tom Ford originally launched in 2005 with fragrance and eyewear, and today is known around the world for its refined elegance.

32. Tom Ford's first fragrance, Black Orchid, launched on November 2, 2006 at the Saks Fifth Avenue flagship store with many high-profile celebrities in attendance.

33. In 2007, Tom Ford launched the Private Blend fragrance collection, which now includes twenty-three fragrances. Lost Cherry, one of the Private Blend fragrances, won the *Allure* Best of Beauty Award in 2021.

34. The worldwide recognition as a luxury brand and the overwhelming popularity of the Tom Ford brand and Private Blend fragrances is due to Tom Ford's continuous commitment to quality and excellence, and the significant time, effort, and money Tom Ford has spent in designing, developing, advertising, and promoting the TOM FORD® brand.

35.    Tom Ford is also the owner of numerous marks, including, in relevant part, the following U.S. federal trademark registrations (the "Tom Ford Marks"):

| Tom Ford Mark | U.S. Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| TOM FORD | 3,127,260 | 08/08/2006 | IC 003- perfume, eau de parfum, eau de toilette and cologne |
| LOST CHERRY | 6,196,838 | 11/10/2020 | IC 003- Fragrances for personal use |
| TOM FORD LOST CHERRY | 6,196,837 | 11/10/2020 | IC 003- Fragrances for personal use |

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

36. A true and correct copy of the trademark registration identified in paragraph 35 of this Complaint is attached hereto as **Exhibit D** and is fully incorporated herein by reference.

37. Tom Ford fragrances are sold nationwide through the website www.tomfordbeauty.com, in Tom Ford free-standing stores, and luxury department and beauty stores such as Saks Fifth Avenue, Nordstrom, and Sephora.

### 5. The ELC Trademarks

38. The Estée Lauder, Le Labo, La Mer, and Tom Ford Marks are collectively referred to herein as "the ELC Trademarks."

39. Plaintiffs have devoted substantial time, effort, and money to designing, developing, advertising, promoting, and marketing their products, and spends millions of dollars per year on advertising, promoting, and marketing the ESTÉE LAUDER®, LE LABO®, LA MER®, and TOM FORD® brands. Plaintiffs advertise throughout the world, from social media to select high-end and artistic magazines. As a result of these efforts, ELC's global net sales exceeded $14 billion in fiscal year 2025.

40. Registrations for the ELC Trademarks are valid, subsisting, and many are incontestable. Plaintiffs were able to obtain trademark registrations for the ELC Trademarks without proof of secondary meaning and thus they are inherently distinctive. Through longstanding use, advertising, and registration, the ELC Trademarks have achieved a high degree of consumer recognition in the United States and the world over and constitute famous marks.

41. Plaintiffs have continuously used the ELC Trademarks in interstate commerce in connection with the sale, distribution, promotion, and advertising of their goods. Accordingly, some of the ELC Trademarks have been used as a source identifier on various goods for more than 40 years.

42. The ELC Trademarks have come to identify, in the United States and throughout the world, high quality fragrances, beauty, and personal care products,

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

designed and manufactured by the Plaintiffs.  In turn, consumers have come to identify the ELC Trademarks as being associated with and originating from the Plaintiffs.

43.    Due to Plaintiffs' long use, extensive sales, and significant advertising and promotional activities, the ELC Trademarks have achieved widespread acceptance and recognition amongst the consuming public and trade throughout the United States.

44.    Plaintiffs have achieved such fame as to be copied by others without authorization, including Defendants, as is the case with many other luxury brands.

### B.    Defendants' Infringing Conduct

45.    The present lawsuit arises from Defendants' manufacture, production, marketing, distribution, advertisement, offering for sale, and/or sale in the U.S. of certain skincare and fragrance products that bear marks that are identical with, substantially indistinguishable from, or confusingly similar to one or more of the ELC Trademarks (the "Accused Products").

46.    Upon information and belief, Zoetop, Shein US Services, and Shein Distribution collectively own and operate a "fast fashion" e-commerce enterprise that sells a wide variety of goods, including cosmetics and fragrances, apparel, and accessories through Defendants' websites, including www.us.shein.com, which is accessible to consumers throughout the United States, including those within this judicial district.

47.    Upon information and belief, Defendants promote, offer for sale, and sell products, including the Accused Products, through its e-commerce platform on www.us.shein.com. On information and belief, Defendants published listings on www.us.shein.com using the ELC Trademarks in its search engine optimization tools to drive traffic to the Accused Products.  Accordingly, Defendants displayed, promoted, and advertised the Accused Products for sale on www.us.shein.com.

48.    Plaintiffs are informed and believe, and thereon allege that a person shopping on www.us.shein.com would have reasonably believed that Shein, and not third-party sellers, was the seller with title or possession of the Accused Product who

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

could have entered into a contract to transfer title or possession.

49. Upon information and belief, Defendants promote the reputation and professionalism of retailers who – with Defendants' support and authorization – sell through Defendants' e-commerce channel. On information and belief, Defendants require third-party sellers to provide valid business licenses before being permitted to list products on the Marketplace platform. Pursuant to Defendants' stated practices, Defendants permitted and selected the sellers of the Accused Products to sell products that infringe upon the ELC Trademarks.

50. Upon information and belief, when consumers purchase a product from the Marketplace, aka Defendants' e-commerce channel on www.us.shein.com Defendants are in control of the payment and checkout process, customer service issues, and handles returns of a product purchased from the Marketplace.  Accordingly, a consumer using Defendants' Marketplace and purchasing the Accused Products would reasonably believe that Defendants were the seller of the Accused Products and/or had a contract with the third-party seller of the Accused Products such that Shein was authorized to sell the same. Further, through Defendants' partnership with its sellers, including those who sold the Accused Products, Defendants provide a level of involvement, support, promotion, advertising, warehousing, fulfillment, returns, and pricing that situates Defendants as the seller of the Accused Products, and the primary beneficiary of the infringement.

51. Plaintiffs are further informed, believe, and thereon allege that Defendants provide marketing and advertising services for third-party sellers.

52. Upon information and belief, Defendants receive a portion of the profits generated from their partners' product listings on the Marketplace website and receive substantial profits from fulfillment fees that eCommerce sellers use on www.us.shein.com.

53. Upon information and belief, Defendants do very little to ensure that only authorized and authentic products are available on www.us.shein.com.  This is readily

apparent given the Accused Products were permitted to be sold on Defendants' website despite their stated careful selection process in who they choose as a Marketplace seller/partner.  Accordingly, Defendants know or had reason to know that the sellers they partnered with were selling products which infringe upon the ELC Trademarks, i.e., the Accused Products.  Defendants know or had reason to know that Defendants promoted, advertised, displayed, offered for sale, and/or sold products which infringe upon the ELC Trademarks, including the Accused Products.

54.  Upon information and belief, Defendants manufactured, distributed, offered for sale, sold, and shipped the Accused Products to consumers in this judicial district.

55.  Plaintiffs have not granted a license or given Defendants any form of permission to use intellectual property belonging to Plaintiffs, including the ELC Trademarks, in any way.  Plaintiffs purchased some of the Accused Products and inspected and/or tested the Accused Products and confirmed the Accused Products did not originate from the Plaintiffs. Defendants used the ELC Trademarks on the Accused Products without Plaintiffs' permission.

### 1. Defendants' Infringement of the Estée Lauder Marks

56.  Plaintiffs are informed, believe, and thereon allege that Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified below  (the "Estée Lauder Accused Products") through Shein's website (www.us.shein.com) to consumers nationwide, including consumers located within this judicial district. Exemplars of the Estée Lauder Accused Products are shown below:

**[Intentionally Left Blank]**

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

  

57.   The Estée Lauder Accused Products are not genuine Estée Lauder products.

58.   The Estée Lauder Accused Products that Defendants sold and shipped to various consumers within this District are very likely to cause confusion for consumers, including Plaintiffs' customers, who, at the time of initial interest, sale, and/or in the post-sale setting are led to believe that the Estée Lauder Accused Products are genuine goods originating from, associated with, and/or approved by Estée Lauder due to the marks being identical, substantially indistinguishable, or confusingly similar to the Estée Lauder Marks.

59.   Upon information and belief, Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive as to the origin, affiliation, or association of the Estée Lauder Accused Products with Estée Lauder, and the sponsorship or approval of the Estée Lauder Accused Products by Estée Lauder.

## 2. Defendants' Infringement of the Le Labo Marks.

60.     Plaintiffs are informed, believe, and thereon allege that Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified below (the "Le Labo Accused Products") through Shein's website (www.us.shein.com) to consumers nationwide, including consumers located within this judicial district. Exemplars of the Le Labo Accused Products below:

   

  

61.     The Le Labo Accused Products are not genuine Le Labo products.

62.     The Le Labo Accused Products that Defendants sold and shipped to various consumers within this District are very likely to cause confusion for consumers, including Plaintiffs' customers, who, at the time of initial interest, sale, and/or in the

post-sale setting are led to believe that the Le Labo Accused Products are genuine goods originating from, associated with, and/or approved by Le Labo due to the marks being identical, substantially indistinguishable, or confusingly similar to the Le Labo Marks.

63.    Upon information and belief, Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive as to the origin, affiliation, or association of the Le Labo Accused Products with Le Labo, and the sponsorship or approval of the Le Labo Accused Products by Le Labo.

### 3.  Defendant's Infringement of the La Mer Marks.

64.    Plaintiffs are informed, believe, and thereon allege that Defendant imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified below (the "La Mer Accused Products") through Shein's website (www.us.shein.com) to consumers nationwide, including consumers located within this judicial district. Exemplars of the La Mer Accused Products are below:



65.    The La Mer Accused Products are not genuine La Mer products.

66.    The La Mer Accused Products that Defendants sold and shipped to various consumers within this District are very likely to cause confusion for consumers, including Plaintiffs' customers, who, at the time of initial interest, sale, and/or in the post-sale setting are led to believe that the La Mer Accused Products are genuine goods

originating from, associated with, and/or approved by La Mer due to the marks being identical, substantially indistinguishable, or confusingly similar to the La Mer Marks.

67.    Upon information and belief, Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive as to the origin, affiliation, or association of the La Mer Accused Products with La Mer, and the sponsorship or approval of the La Mer Accused Products by La Mer.

### 4.  Defendants' Infringement of the Tom Ford Marks

68.    Plaintiffs are informed, believe, and thereon allege that Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified below  (the "Tom Ford Accused Products") through Shein's website (www.us.shein.com) to consumers nationwide, including consumers located within this judicial district. Exemplars of the Tom Ford Accused Products are shown below:



69.    The Tom Ford Accused Products are not genuine Tom Ford products.

70.    The Tom Ford Accused Products that Defendants sold and shipped to various consumers within this District are very likely to cause confusion for consumers, including Plaintiffs' customers, who, at the time of initial interest, sale, and/or in the

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

post-sale setting are led to believe that the Tom Ford Accused Products are genuine goods originating from, associated with, and/or approved by Tom Ford due to the marks being identical, substantially indistinguishable, or confusingly similar to the Tom Ford Marks.

71.    Upon information and belief, Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive as to the origin, affiliation, or association of the Tom Ford Accused Products with Tom Ford, and the sponsorship or approval of the Tom Ford Accused Products by Tom Ford.

72.    With regard to all of the foregoing Accused Products, Plaintiffs are informed and believe and thereon alleges that Defendants are competitors of Plaintiffs and Defendants introduced the Accused Products into the stream of commerce in an effort to exploit Plaintiffs' goodwill and the reputation of the ELC Trademarks. Furthermore, Plaintiffs allege that that the Accused Products are deliberate copies of Plaintiffs' goods created to confuse consumers into believing that the Accused Products were authentic  products, or otherwise manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs or come from the same source as Plaintiffs' goods when they in fact do not.

## FIRST CAUSE OF ACTION

### (Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114

### - Estée Lauder Marks)

73.    Plaintiffs incorporate by reference each and every one of the preceding paragraphs as though fully set forth herein.

74.    This is an action for trademark infringement and/or counterfeiting against Defendants under 15 U.S.C. § 1114 based on their use of counterfeit and confusingly similar imitations of the Estée Lauder Marks in commerce in connection with Defendants' promotion, distribution, manufacturing, offer for sale, sale, marketing, and/or advertising of the Estée Lauder Accused Products.

75. The Estée Lauder Marks are nationally recognized, including within the Central District of California, as being affixed to goods and merchandise of the highest quality, with Estée Lauder being the exclusive source of all such products.

76. The specific U.S. registrations to the Estée Lauder Marks identified herein are in full force and effect, and each one has been in continuous use since their respective first dates of use. Indeed, the U.S. registrations identified in paragraph 18 are incontestable by virtue of their registrations and continuous use in commerce for more than five years.

77. The Estée Lauder Accused Products bear counterfeit marks that are identical or substantially indistinguishable to the Estée Lauder Marks based on how the marks appear in the marketplace to a consumer. The marks on the Estée Lauder Accused Products are spurious because Estée Lauder has examined the marks and confirmed they are inauthentic. Due to the identical or substantially indistinguishable appearance of the marks compared to the Estée Lauder Marks, consumers are likely to be confused, mistaken, or deceived, as to the origin of the marks on the Estée Lauder Accused Products.

78. The Estée Lauder Accused Products bear marks that are confusingly similar to the Estée Lauder Marks based on how the marks appear in the marketplace to a consumer such that it is likely to cause confusion, mistake, or deception as to the origin of the marks on the Estée Lauder Accused Products.

79. The identical or substantially indistinguishable or confusingly similar marks on the Estée Lauder Accused Products are likely to lead to and result in consumers believing that Estée Lauder produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Estée Lauder.

80. Defendants' promotion, marketing, advertising, offering for sale, selling, manufacturing, and/or distribution of the Estée Lauder Accused Products and marks

within is without Estée Lauder's permission or authority and in total disregard of Estée Lauder's rights to control its intellectual property.

81. Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Estée Lauder and reap the benefit of Estée Lauder's goodwill associated with the Estée Lauder Marks.

82. As a direct and proximate result of Defendants' infringing conduct, Estée Lauder has been injured and will continue to suffer injury to its business and reputation unless Defendants are enjoined by this Court from advertising, selling, and offering for sale products bearing the Estée Lauder Marks that are not in fact authentic Estée Lauder® products.

83. Estée Lauder has no adequate remedy at law.

84. In light of the foregoing, Estée Lauder is entitled to injunctive relief prohibiting Defendants from using any of the Estée Lauder Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Estée Lauder has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## SECOND CAUSE OF ACTION

### (Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114 - Le Labo Marks)

85. Plaintiffs incorporate by reference each and every one of the preceding paragraphs as though fully set forth herein.

86. This is an action for trademark infringement and/or counterfeiting against Defendants under 15 U.S.C. § 1114 based on their use of counterfeit and confusingly similar imitations of the Le Labo Marks in commerce in connection with Defendants'

promotion, distribution, manufacturing, offer for sale, sale, marketing, and/or advertising of the Le Labo Accused Products.

87.    The Le Labo Marks are nationally recognized, including within the Central District of California, as being affixed to goods and merchandise of the highest quality, with Le Labo being the exclusive source of all such products.

88.    The specific U.S. registrations to the Le Labo Marks identified herein are in full force and effect, and each one has been in continuous use since their respective first dates of use.  Indeed, two of the U.S. registrations identified in paragraph 24, namely Reg. Nos. 4,659,715 and 4,659,463 are incontestable by virtue of their registrations and continuous use in commerce for more than five years.

89.    The Le Labo Accused Products bear counterfeit marks that are identical or substantially indistinguishable to the Le Labo Marks based on how the marks appear in the marketplace to a consumer.  The marks on the Le Labo Accused Products are spurious because Le Labo has examined the marks and confirmed they are inauthentic.  Due to the identical or substantially indistinguishable appearance of the marks compared to the Le Labo Marks, consumers are likely to be confused, mistaken, or deceived, as to the origin of the marks on the Le Labo Accused Products.

90.    The Le Labo Accused Products bear marks that are confusingly similar to the Le Labo Marks based on how the marks appear in the marketplace to a consumer such that it is likely to cause confusion, mistake, or deception as to the origin of the marks on the Le Labo Accused Products.

91.    The identical or substantially indistinguishable or confusingly similar marks on the Le Labo Accused Products are likely to lead to and result in consumers believing that Le Labo produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Le Labo.

92.    Defendants' promotion, marketing, advertising, offering for sale, selling, manufacturing, and/or distribution of the Le Labo Accused Products and marks within

is without Le Labo's permission or authority and in total disregard of Le Labo's rights to control its intellectual property.

93. Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Le Labo and reap the benefit of Le Labo's goodwill associated with the Le Labo Marks.

94. As a direct and proximate result of Defendants' infringing conduct, Le Labo has been injured and will continue to suffer injury to its business and reputation unless Defendants are enjoined by this Court from advertising, selling, and offering for sale products bearing the Le Labo Marks that are not in fact authentic Le Labo products.

95. Le Labo has no adequate remedy at law.

96. In light of the foregoing, Le Labo is entitled to injunctive relief prohibiting Defendants from using any of the Le Labo Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Le Labo has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

**THIRD CAUSE OF ACTION**

**(Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114**

**- La Mer Marks)**

97. Plaintiffs incorporate by reference each and every one of the preceding paragraphs as though fully set forth herein.

98. This is an action for trademark infringement and/or counterfeiting against Defendants under 15 U.S.C. § 1114 based on their use of counterfeit and confusingly similar imitations of the La Mer Marks in commerce, in connection with Defendants' promotion, distribution, manufacturing, offer for sale, sale, marketing, and/or advertising of the La Mer Accused Products.

99. The La Mer Marks are nationally recognized, including within the Central District of California, as being affixed to goods and merchandise of the highest quality, with La Mer being the exclusive source of all such products.

100. The specific U.S. registrations to the La Mer Marks identified herein are in full force and effect, and each one has been in continuous use since their respective first dates of use. Indeed, the U.S. registrations identified in paragraph 29 are incontestable by virtue of their registrations and continuous use in commerce for more than five years.

101. The La Mer Accused Products bear counterfeit marks that are identical or substantially indistinguishable to the La Mer Marks based on how the marks appear in the marketplace to a consumer. The marks on the La Mer Accused Products are spurious because La Mer has examined the marks and confirmed they are inauthentic. Due to the identical or substantially indistinguishable appearance of the marks compared to the La Mer Marks, consumers are likely to be confused, mistaken, or deceived, as to the origin of the marks on the La Mer Accused Products.

102. The La Mer Accused Products bear marks that are confusingly similar to the La Mer Marks based on how the marks appear in the marketplace to a consumer such that it is likely to cause confusion, mistake, or deception as to the origin of the marks on the La Mer Accused Products.

103. The identical or substantially indistinguishable or confusingly similar marks on the La Mer Accused Products are likely to lead to and result in consumers believing that La Mer produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of La Mer.

104. Defendants' promotion, marketing, advertising, offering for sale, selling, manufacturing, and/or distribution of the La Mer Accused Products and marks within is without La Mer's permission or authority and in total disregard of La Mer's rights to control its intellectual property.

105.   Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure La Mer and reap the benefit of La Mer's goodwill associated with the La Mer Marks.

106.   As a direct and proximate result of Defendants' infringing conduct, La Mer has been injured and will continue to suffer injury to its business and reputation unless Defendants are enjoined by this Court from advertising, selling, and offering for sale products bearing the La Mer Marks that are not in fact authentic LA MER® products.

107.   La Mer has no adequate remedy at law.

108.   In light of the foregoing, La Mer is entitled to injunctive relief prohibiting Defendants from using any of the La Mer Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that La Mer has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## FOURTH CAUSE OF ACTION

### (Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114

### - Tom Ford Marks)

109.   Plaintiffs incorporate by reference each and every one of the preceding paragraphs as though fully set forth herein.

110.   This is an action for trademark infringement and/or counterfeiting against Defendants under 15 U.S.C. § 1114 based on their use of counterfeit and confusingly similar imitations of the Tom Ford Marks in commerce, in connection with Defendants' promotion, distribution, manufacturing, offer for sale, sale, marketing, and/or advertising of the Tom Ford Accused Products.

111.    The Tom Ford Marks is nationally recognized, including within the Central District of California, as being affixed to goods and merchandise of the highest quality, with Tom Ford being the exclusive source of all such products.

112.    The specific U.S. registration to the Tom Ford Marks identified in paragraph 35 is in full force and effect, and has been in continuous use since its first date of use.  Indeed, the Tom Ford Marks are incontestable by virtue of its registration and continuous use in commerce for more than five years.

113.    The Tom Ford Accused Products bear counterfeit marks that are identical or substantially indistinguishable to the Tom Ford Marks based on how the marks appear in the marketplace to a consumer.  The marks on the Tom Ford Accused Products are spurious because Tom Ford has examined the marks and confirmed they are inauthentic.  Due to the identical or substantially indistinguishable appearance of the marks compared to the Tom Ford Marks, consumers are likely to be confused, mistaken, or deceived, as to the origin of the marks on the Tom Ford Accused Products.

114.    The Tom Ford Accused Products bear marks that are confusingly similar to the Tom Ford Marks based on how the marks appear in the marketplace to a consumer such that it is likely to cause confusion, mistake, or deception as to the origin of the marks on the Tom Ford Accused Products.

115.    The identical or substantially indistinguishable or confusingly similar marks on the Tom Ford Accused Products are likely to lead to and result in consumers believing that Tom Ford produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Tom Ford.

116.    Defendants' promotion, marketing, advertising, offering for sale, selling, manufacturing, and/or distribution of the Tom Ford Accused Products and marks within is without Tom Ford's permission or authority and in total disregard of Tom Ford's rights to control its intellectual property.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

117. Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Tom Ford and reap the benefit of Tom Ford's goodwill associated with the Tom Ford Marks.

118. As a direct and proximate result of Defendants' infringing conduct, Tom Ford has been injured and will continue to suffer injury to its business and reputation unless Defendants are enjoined by this Court from advertising, selling, and offering for sale products bearing the Tom Ford Marks that are not in fact authentic TOM FORD® products.

119. Tom Ford has no adequate remedy at law.

120. In light of the foregoing, Tom Ford is entitled to injunctive relief prohibiting Defendants from using any of the Tom Ford Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Tom Ford has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## FIFTH CAUSE OF ACTION

### (False Designation of Origin and False Descriptions – 15 U.S.C. § 1125(a) - Estée Lauder Marks)

121. Estée Lauder incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

122. Defendants' unauthorized use of marks identical or substantially indistinguishable or confusingly similar to the Estée Lauder Marks on its merchandise, in interstate commerce and advertising relating to same, constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored,

authorized, licensed by or otherwise connected with Estée Lauder or come from the same source as Estée Lauder' goods when they in fact do not.

123. Defendants' use of the Estée Lauder Marks is without Estée Lauder's permission or authority and in total disregard of Estée Lauder's rights to control its trademarks.

124. Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Estée Lauder has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Estée Lauder.

125. Estée Lauder has no adequate remedy at law.

126. In light of the foregoing, Estée Lauder is entitled to injunctive relief prohibiting Defendants from using any of the Estée Lauder Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Estée Lauder has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## SIXTH CAUSE OF ACTION

### (False Designation of Origin and False Descriptions – 15 U.S.C. § 1125(a) - Le Labo Marks)

127. Le Labo incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

128. Defendants' unauthorized use of marks identical or substantially indistinguishable or confusingly similar to the Le Labo Marks on its merchandise, in interstate commerce and advertising relating to same, constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored,

authorized, licensed by or otherwise connected with Le Labo or come from the same source as Le Labo' goods when they in fact do not.

129. Defendants' use of the Le Labo Marks is without Le Labo's permission or authority and in total disregard of Le Labo's rights to control its trademarks.

130. Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Le Labo has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Le Labo.

131. Le Labo has no adequate remedy at law.

132. In light of the foregoing, Le Labo is entitled to injunctive relief prohibiting Defendants from using any of the Le Labo Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Le Labo has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## SEVENTH CAUSE OF ACTION

### (False Designation of Origin and False Descriptions – 15 U.S.C. § 1125(a) - La Mer Marks)

133. La Mer incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

134. Defendants' unauthorized use of marks identical or substantially indistinguishable or confusingly similar to the La Mer Marks on its merchandise, in interstate commerce and advertising relating to same, constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with La Mer or come from the same source as La Mer' goods when they in fact do not.

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

135. Defendants' use of the La Mer Marks is without La Mer's permission or authority and in total disregard of La Mer's rights to control its trademarks.

136. Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that La Mer has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of La Mer.

137. La Mer has no adequate remedy at law.

138. In light of the foregoing, La Mer is entitled to injunctive relief prohibiting Defendants from using any of the La Mer Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that La Mer has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## EIGHTH CAUSE OF ACTION

**(False Designation of Origin and False Descriptions – 15 U.S.C. § 1125(a) - Tom Ford Marks)**

139. Tom Ford incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

140. Defendants' unauthorized use of marks identical or substantially indistinguishable or confusingly similar to the Tom Ford Marks on its merchandise, in interstate commerce and advertising relating to same, constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Tom Ford or come from the same source as Tom Ford's goods when they in fact do not.

141. Defendants' use of the Tom Ford Marks is without Tom Ford's permission or authority and in total disregard of Tom Ford's rights to control its trademarks.

142. Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Tom Ford has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Tom Ford.

143. Tom Ford has no adequate remedy at law.

144. In light of the foregoing, Tom Ford is entitled to injunctive relief prohibiting Defendants from using any of the Tom Ford Marks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Tom Ford has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## NINTH CAUSE OF ACTION

### (Common Law Trademark Infringement and Unfair Competition

### - All Accused Products)

145. Plaintiffs incorporate by reference each and every one of the preceding paragraphs as though fully set forth herein.

146. Plaintiffs own and enjoy common law trademark rights to the ELC Trademarks in California and throughout the United States.

147. Defendants' misappropriation of Plaintiffs' common law trademarks was intended to capitalize on Plaintiffs' goodwill for Defendant's own pecuniary gain. Plaintiffs have expended substantial time, resources and effort to obtain an excellent reputation for themselves and their respective trademarks. As a result of Plaintiffs' efforts, Defendants are now unjustly enriched and are benefiting from property rights that rightfully belong to Plaintiffs.

148. Defendants' unauthorized use of the ELC Trademarks has caused and is likely to cause confusion as to the source of Defendant's products due to the marks

appearing identical, substantially indistinguishable, or confusingly similar to the ELC Trademarks, all to the detriment of Plaintiffs.

149.    Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Plaintiffs.

150.    Defendants' acts constitute unfair competition under California common law.

151.    Plaintiffs have no adequate remedy at law to compensate them fully for the damages that have been caused and which will continue to be caused by Defendants' infringing conduct unless it is enjoined by this Court.

152.    The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights. Said conduct was despicable and harmful to Plaintiffs and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of Defendants and to deter them from similar such conduct in the future.

153.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the ELC Trademarks,  to recover all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## TENTH CAUSE OF ACTION

### (Vicarious Trademark Infringement)

154.    Plaintiffs incorporate by reference each and every one of the preceding paragraphs as though fully set forth herein.

155.    Defendants and the third parties who upload the Accused Products on Defendants' website are in an apparent or actual partnership, have the authority to bind one another in transactions with third parties, and/or exercise joint ownership or control over the infringing products.  Defendants are thus vicariously liable for the trademark

infringement and counterfeiting of the third parties who sell the Accused Products through Defendants' Marketplace.

156. Due to Defendants' acts of vicarious trademark infringement, Plaintiff has suffered damages in an amount to be established at trial.

157. Due to Defendants' acts of vicarious trademark infringement, Plaintiff and other sellers on its site have obtained profits they would have not realized but for Defendants' contributory infringement. As such, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using any of the ELC Trademarks, and/or any marks identical, substantially indistinguishable, or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Defendants as follows:

1. Entry of an ORDER granting temporary, preliminary and permanent injunctive relief restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them from:

    a. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products and/or any other products that bear the ELC Trademarks, or any other marks identical, substantially indistinguishable, or confusingly similar thereto;

    b. engaging in any other activity constituting unfair competition with Plaintiffs, or acts and practices that deceive consumers, the public,

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

and/or trade, including without limitation, the use of designations and design elements associated with Plaintiffs;

   c. committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Plaintiffs;

2. Entry of an ORDER directing Defendants to recall from any distributors and retailers and to destroy all remaining inventory of the Accused Products, in addition to any other goods that infringe upon Plaintiffs' rights to the ELC Trademarks, including all advertisements, promotional and marketing materials therefore, as well as means of making same in their possession or under their control;

3. Entry of an ORDER directing Defendants to disclose their supplier(s) and manufacturer(s) of the Accused Products and provide all documents, correspondence, receipts, and invoices associated with the purchase of the Accused Products;

4. Entry of an ORDER directing Defendants to file with this Court and serve on Plaintiffs within thirty (30) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

5. Entry of an ORDER for an accounting by Defendants of all gains, profits, and/or advantages derived from their infringing acts pursuant to 15 U.S.C. § 1117(a);

6. Awarding treble damages in the amount of Defendants' profits or Plaintiffs' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

7. Awarding Plaintiffs statutory damages pursuant to 15 U.S.C. §1117(c);

8. An award of enhanced damages due to Defendants' willful infringement;

9. An award of applicable interest amounts, costs, disbursements, and/or attorneys' fees, as an exceptional case under 15 U.S.C. § 1117 or otherwise;

10. An award of fees and punitive damages to the full extent available in connection with Plaintiffs' claims under California law; and

11. Any such other relief that may be just and proper.


Dated:  February 18, 2026                    BLAKELY LAW GROUP


                                 By:    */s/ Victoria E. Mulvey*
                                        Brent H. Blakely
                                        Victoria E. Mulvey
                                        **Attorneys for Plaintiffs**
                                        **Estée Lauder, Inc; Le Labo Holding LLC; La Mer Technology, Inc.; and 001 Del LLC d/b/a Tom Ford**

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Estée Lauder, Inc; Le Labo Holding LLC; La Mer Technology, Inc.; and 001 Del LLC d/b/a Tom Ford hereby demand a trial by jury as to all claims in this litigation.

Dated:        February 18, 2026        BLAKELY LAW GROUP


By:     */s/ Victoria E. Mulvey*
Brent H. Blakely
Victoria E. Mulvey
***Attorneys for Plaintiffs***
***Estée Lauder, Inc; Le Labo Holding***
***LLC; La Mer Technology, Inc.; and***
***001 Del LLC d/b/a Tom Ford***